THE DAKE ENGINE MANUFACTURING COMPANY V. JAMES
HURLEY.

*Sale—Warranty—Breach—Recoupment—Practice in Supreme Court
—Exceptions—Index to record.*

1. Where error is assigned upon the exclusion of evidence, atten-
tion should be called to the exception taken to the ruling com-
plained of by citing the page of the record where it may be
found, unless exceptions are indexed under Rule No. 61.

2. Plaintiff sold an engine and boiler to the defendant, which proved
unsatisfactory, and a new arrangement was made by which
the boiler was returned, and the purchase price was reduced,
and secured by the notes of the defendant. He paid a portion
of the notes, and in a suit upon the remaining note sought to
recoup damages for the breach of an alleged warranty, made
when the notes were given, that the engine should do defend-
ant's work as effectively and economically as any other engine.
The defendant testified that he told the plaintiff that he did
not like the engine; that it used too much steam; that it was
not as economical as represented; that he did not like the
boiler; that it was not large enough, and would not furnish
steam for the engine; and that plaintiff's agent said that, if
defendant would get a certain sized boiler, he would guarantee
that the engine would do the required work, and as economi-
cally as any other engine; and that defendant was willing to
buy another boiler, and continue the use of the engine, and
did so. And in answer to the contention of the plaintiff that
the language claimed to have been used was but the expres-
sion of an opinion, and that the force of the alleged warranty
was lost for the reason that the defendant knew that the
engine would not work as economically as other engines, and
could not have relied upon the undertaking that it should, it
is held that whether the defendant procured the new boiler
and continued the use of the engine in reliance upon the
alleged warranty, as he claimed, or with the design of keep-
ing the engine, and using the warranty, upon which he did
not rely, as a subterfuge to avoid payment, were pertinent
questions for the jury, to be determined in the light afforded
by the defendant's subsequent conduct, and that the question
of recoupment was properly left to the jury.

3. It appeared that certain representations regarding the engine

were made at the time it was contracted for which were not covered by the alleged warranty. And it is held that the new arrangement supplanted the old one, and that the jury should have been confined, in awarding damages, to the breach of said warranty, if one was shown to have been given.

Error to Bay. (Cobb, J.) Argued January 2, 1894. Decided February 12, 1894.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Pratt, Van Kleeck & Gilbert* (*George A. Farr,* of counsel), for appellant.

*T. A. E. & J. C. Weadock,* for defendant.

HOOKER, J. The plaintiff sold an engine and boiler to the defendant, which proved unsatisfactory, and an arrangement was made by which the boiler was returned, and the price of the engine reduced from $800 to $547, for which the defendant gave his promissory notes, dated January 26, 1889, due in two, four, and six months, respectively. The defendant claims that, as a part of this arrangement, the plaintiff warranted that the engine should do the defendant's work as effectively and economically as any other engine. This is denied by the plaintiff. The defendant used the engine for a time in sawing wood; and subsequently rented it to parties in Cincinnati, who returned it to him, as he claims, October 6, 1889, in a worthless condition. Meantime he had renewed or paid the notes, the last payment being made September 10, 1889, making the amount paid $347, and the note sued upon being a renewal for the remainder of the purchase price of the engine. He subsequently sold the engine for $200. Upon the trial the defendant claimed damages by way of recoupment, and recovered a judgment for $208.41, which appears to have

99 Mich.—2.

been the difference between $200, the amount received from the engine, and $347, the amount he had paid, and interest, the verdict, in effect, giving to the plaintiff $200 for the engine.

The plaintiff complains of the refusal of the judge to direct a verdict in its favor upon the ground that no warranty was shown, claiming that the language, had it been used as asserted by the defendant, was but the expression of an opinion. The testimony of the defendant upon the subject was as follows:

"I told him that I didn't like the engine; it used too much steam; it was not as economical as was represented to me. And then I says: 'That boiler in particular; I don't like the boiler. It isn't big enough. It won't furnish steam for that engine.' We had tried it, and found out that it would not. And then he said to me, if I would get a boiler,—a certain sized boiler,—that he would guarantee that engine would do the work, and as economical as any other engine."

It is contended that the force of this alleged warranty is lost, because the defendant knew that the engine would not work as economically as others, and could not have relied upon the undertaking that it should. We are unable to say that is established. The defendant says that he knew when Mr. Cairns came, as well as he did afterwards, that it would not work and do the work. Still he was willing to buy another boiler, and continue its use, and did so. Whether this was done in reliance upon an undertaking that the engine should work, as is claimed by defendant's counsel, or with the design of keeping the engine, and using the alleged warranty, upon which he did not rely, as a subterfuge to avoid payment, are pertinent questions for the jury, to be determined by the light afforded by his subsequent conduct. We think that the court was not in error in leaving the question of recoupment to the jury.

It appears that of the $547, the contract price of the engine, $347 had been paid. The defendant was allowed to recover this sum of $347 and interest, less $200 and interest, received upon a sale of the engine. This was apparently upon the theory that the engine was worthless, and that the defendant should not be required to pay anything for it. We cannot review the action of the jury upon this subject, but think that they should have been allowed to take into consideration the amount of rent received from the engine. The engine was used by the defendant only for sawing wood, after he received it the second time. It is said that it was extravagant in the use of steam; but payments were made upon it until September 10, and it was not until October 6, after it had been returned from Cincinnati in bad condition, that further payment was refused. What figure was cut by its use in Cincinnati, and its condition on its return, we do not know; but, if the proof justified the jury in saying that the defendant received no benefit from the use made of the engine by him in his work, they should have had the opportunity of considering the amount received by him for the rental of the engine, if the amount was shown. Error is alleged upon the exclusion of such evidence, but our attention is not called to any exception upon this point by citing the record, which should always be done, unless exceptions are indexed under the rule. We have been unable to find it in the cross-examination of the defendant, where it is said to be. The same may be said about the evidence upon the subject of the price received for the engine. So far as we are able to discover, this testimony came in without objection, and there is no error alleged upon its introduction.

There is no force in the assignment that the court assumed $200 to be the amount for which the engine sold. He stated that to be the defendant's claim, but expressed

no opinion himself, and he expressly stated to the jury that it was the actual value of the engine, and not the price received, that should be considered. He did not even say that the price received was evidence of the value.

The jury were directed to compute interest on $347 from date of payment to time of trial. It is contended that it should have been computed upon $147 only, after the $200 was received. This is perhaps true, but, as the jury were directed to set it off against the amount of the note sued upon *and interest*, the result is the same as though the other course had been taken. To make it more plain: The contract price was $547 and interest. Defendant claimed damage to the amount paid, $347, and interest. This leaves $200 and interest, which defendant was willing to pay. As he had paid $347, the deduction of the $200 and interest from the $347 and interest would show the balance due, upon defendant's theory.

The dealings with Armstead and Cairns were within their authority, and testimony in relation thereto was properly admitted.

We think that the charge is open to criticism under the thirteenth assignment of error. The court had instructed the jury as follows:

"But the defendant comes in now with the plea, and says that the note was a renewal of a note—not the immediate renewal, but, after several renewals, it was the last of the series of renewals of that note—that was given in part payment of the engine that we have heard so much about, and that the bargain about the engine was this: That it should be perfect in every way, that it should be of about as much or more capacity, and use less fuel, than another make of hoisting engine of equal or similar power; and that the note, and all the previous notes that he gave and has paid, were given in reliance upon that warranty of the perfection, economy, and capacity of the engine,—in other words, that he would not have given the notes if they had not made him that warranty, and he had not relied upon it; and that the warranty proved to be false; that the

machine was not perfect; would not do as much work as other engines of the same hoisting power; that the drums were not properly contructed; that it did not work economically, and that to do a reasonable amount of work it would require three times as much fuel as other engines; that to do any work it would use an extravagant amount of fuel; and that, after it had been sent back to Grand Haven, and overhauled by the plaintiff, it was worse than it was before, and really worth little or nothing,—not worth as much as it actually was before. So that, instead of being indebted to the plaintiff for the balance of the purchase price, which is represented by this note, he says that he has a claim on them for a part of the money that he actually paid them; that is, he has a claim against them for the breach of their contract of warranty for damages, which claim more than equals the amount of this note. There is the claim which the defendant, Mr. Hurley, in the first place, set up as his defense against the claim made by the plaintiff in this suit, claiming a right to have his damages assessed, and whatever amount shall be found due to him set against the amount which the note called for, and let the verdict be for the balance, one way or the other; the defendant, of course, claiming that would be in his favor. Now, having set up that claim, it belongs to the defendant to prove it, if he can; to prove it, before he can have a verdict."

It appeared upon the trial that at the time the engine was contracted for there were representations, and perhaps undertakings, by the plaintiff in respect to the engine, not covered by the second arrangement; and in fact there was evidence that it was not to be accepted unless it proved satisfactory; and it was not accepted under the first bargain, but a new one was made. This new undertaking supplanted the old, and it was that the engine should do defendant's work, and as economically as any other. The jury should not have been allowed to award damages because the engine "was not perfect in every way," or for the reason that it did not "have more capacity, and use less fuel, than another make of hoisting engine of similar power," or that "the drums were not properly constructed."

The court instructed the jury further as follows in response to a suggestion of counsel:

"*Mr. Weadock:* There are one or two suggestions I would like to make:

"*First.* The request to the court to charge—which I think the. court has intended to charge—that the use of more than the ordinary amount of fuel would be a defect. In your charge·you confined it to defect. That might be considered to be a defect. That might be considered to be a defect in the make-up of the machine.

"*Second.* As to the second warranty, you left the question as to whether there was a second warranty to the jury. Upon the question of a second warranty, the testimony of not only Mr. Hurley, but of Mr. Armstead, that Mr. Cairns told him that he had made one,—there is no disputing that. And as to the signing of the note the testimony is that the note reached there before the 2d of October.

"*The Court:* Gentlemen, what I have said to you about the effect of making a warranty, and the breach of the warranty, I intend to apply to any warranty you find is shown by the testimony, and to any breach of it. I don't want to be misunderstood about this matter of fuel. That is one of the substantial things that the defendant complained of,—that it used such a very large amount of fuel in excess of that which engines of that kind ought to use that it greatly reduced its value. Of course, I don't know whether you will believe any of it, or how much you will believe of it, but that is a substantial defect in the engine, which would go to reduce its value, and that is what I meant to say to you; that is, that is one of the defects."

From this the jury may have thought that the whole subject from the first negotiation was open to their consideration, when they should have been told that the damages recoverable were those only which were covered by the last undertaking.

The judgment must be reversed, and a new trial ordered. The other Justices concurred.